UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONEY ALFONSO JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>C. ECHANO, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-04166-YGR (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND REFERRING MATTER FOR SETTLEMENT PROCEEDINGS** |

## I.   INTRODUCTION

Plaintiff Toney Alfonso Johnson, a state prisoner, brings the instant *pro se* action under 42 U.S.C. § 1983. Plaintiff alleges that he was subjected to improper force by Defendants San Mateo County Sheriff's Department Correctional Officers Calvin Echano and William Robinson while Defendant Sheriff's Deputy Brandon Hensel did nothing to intervene during a May 29, 2014 incident while he was housed as a pre-trial detainee at the Maguire Correctional Facility ("MCF"). Plaintiff also alleges that Defendant MCF Nurse Gideon Grivas[1] denied Plaintiff x-rays after the incident. Plaintiff seeks monetary damages.

The parties are presently before the Court on Defendants' motion for summary judgment. Defendants move for summary judgment on the following grounds: "[1] Plaintiff's claim for excessive force under § 1983 is barred by the Prison Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative remedies; [2] Plaintiff's excessive force claim *and* his deliberate indifference claim are barred under the PLRA because Plaintiff had no serious injury or medical need; [3] Plaintiff cannot establish a claim under § 1983 for excessive force against Defendants; [4] Plaintiff cannot establish a claim for deliberate indifference under § 1983 against Defendants; and [5] Even assuming *arguendo* Plaintiff could establish his claims under § 1983, which he cannot, Defendants would be entitled to qualified immunity." Dkt. 18 at 2 (emphasis in

---

[1] Plaintiff initially named "Defendant Nurse Gideon" as a Defendant in this action. Dkt. 1, 7. Defendants have since informed the Court that the nurse's full name is "Gidion Grivas." Dkt. 11 at 1-2. Therefore, the Court will refer to this Defendant as Defendant Grivas.

original).[2]

Having read and considered the papers submitted, and being fully informed, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## II. BACKGROUND

### A. Factual Summary

#### 1. Plaintiff's Version

Plaintiff alleges that on May 29, 2014, he was subjected to excessive force by Defendants Robinson and Echano. Dkt. 1 at 3, 3-6. Specifically, Plaintiff alleges that on the date of the incident, Defendant Echano had searched Plaintiff's cell earlier that day and confiscated four of his "hemorrhoidal suppositories." *Id.* at 5. Defendants Echano, Robinson and Hensel then returned to Plaintiff's cell at around 9:45 pm to "search [it] for a box of hemorrhoidal suppositories" and confiscate it because there was a suspicion that Plaintiff was "hoarding them." *Id.* at 3, 5. Plaintiff argued that the suppositories were given to him by the physician "as treatment for his serious hemorrhoidal condition." *Id.* at 5. Defendant Robinson directed Plaintiff to "get against the wall to be handcuffed." *Id.* Before he could respond, Plaintiff claims that Defendant Robinson "rushed directly up to Plaintiff and with closed fists and full force hit Plaintiff in the nose (causing a two inch scare [sic]) and punch[ed] Plaintiff in the head area . . . ." *Id.* at 6. Plaintiff claims that while he was being assaulted by Defendant Robison, Defendant Echano "simultaneously was punching [him] in his rib-cage on the lower left-side . . . ." *Id.* During the entire incident, Defendant Hensel stood at the cell door and watched the assault for "approximately ten minutes." *Id.*

Plaintiff claims that after the incident, "[n]o deputy would give [him] a grievance form." Dkt. 21-1 at 2. In an "Informal Handwritten Complaint" addressed to San Mateo County Sheriff G. Munks and dated June 9, 2014, Plaintiff complained of the excessive force incident. Dkt. 18-17 at 2-4.

---

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

Plaintiff claims that he suffered injuries as a result of the assault, and on June 4, 2014,[3] he was escorted to the medical department for x-rays of his "left shoulder and rib cage on the lower left side." *Id.* at 3. When asked by the x-ray technician if he was supposed to take an x-ray of Plaintiff's "rib cage on the lower left side," Defendant Grivas responded, "no." *Id.* Plaintiff claims that Defendant Grivas's actions denied Plaintiff "meaningful medical treatment and prolonged [his] pain [and] suffering." Dkt. 1 at 7.

On June 9, 2014, Plaintiff filed a formal grievance regarding Defendant Grivas's "refusal to have ex-rays [sic] of [his] rib cage on the lower left side taken."[4] Dkt. 22-1 at 3. Plaintiff claims that his "grievance was granted," and "on July 9, 2014, medical staff took ex-rays [sic] of [his] rib cage." *Id.* However, Plaintiff stresses that no x-rays were taken of the lower left side of his rib cage. *Id.*

Plaintiff claims that he "experienced extreme pain from the injury to [his] rib cage on the lower left side for nearly one year." *Id.* He adds that from May 29, 2014 through August 2014, [he] received pain medication for the fracture to [his] rib cage on the lower left side." *Id.*

### 2. Defendants' Version

On the evening of May 29, 2014, Defendants Robinson, Echano, and Hensel were on-duty officers at MCF, where Plaintiff was an inmate. Robinson Decl. ¶ 2; Echano Decl. ¶ 2; Hensel Decl. ¶ 2.

On the evening of May 29, 2014, Defendants Robinson, Echano, and Hensel approached Plaintiff's cell to retrieve a box of hemorrhoid suppositories that Plaintiff was "hoarding" in his cell. Robinson Decl. ¶ 3; Echano Decl. ¶ 2; Hensel Decl. ¶ 2. Defendant Robinson verbally

---

[3] Plaintiff claims he had contact with Defendant Grivas on June *3*, 2014. Dkt. 1 at 7; Dkt. 21-1 at 3. However, the record shows that he had contact with Defendant Grivas on June *4*, 2014, and that the x-rays of his chest and shoulder were taken that date. Grivas Decl. ¶¶ 2-3; Dr. Ding Decl., Exs. A, B. Therefore, the Court assumes that Plaintiff incorrectly noted that the date was June 3 instead of June 4.

[4] While Plaintiff does not make any references to any other formal grievances, the record shows that he filed another grievance on June 26, 2014 based on a denial of a follow-up examination of his lower rib cage, which is further discussed in detail below. *See* Robbins Decl. ¶ 4, Ex. A at 3.

directed Plaintiff to turn over the box of suppositories three times, but each time Plaintiff refused. Robinson Decl. ¶ 4; Echano Decl. ¶ 3; Hensel Decl. ¶ 3. Plaintiff took a "bladed stance, became agitated, and balled up his fists." Robinson Decl. ¶ 5; Echano Decl. ¶ 4; Hensel Decl. ¶ 4. Defendant Robinson claims that, at that time, he was concerned that Plaintiff "might become assaultive," based on his behavior. Robinson Decl. ¶ 5. Defendant Robinson asked Plaintiff to turn around and put his hands behind his back to be handcuffed, but he refused. Robinson Decl. ¶ 6; Echano Decl. ¶ 5; Hensel Decl. ¶ 5. Defendant Robinson then told Plaintiff that he had one more chance to cooperate, but Plaintiff continued to refuse. Robinson Decl. ¶ 7; Echano Decl. ¶ 6; Hensel Decl. ¶ 6. At that point, Defendants Echano and Hensel assisted Defendant Robinson by helping to grab Plaintiff's arms as Plaintiff continued to resist by "tensing his arms and trying to curl one of his arms in front of his body." Robinson Decl. ¶ 8; Echano Decl. ¶ 7; Hensel Decl. ¶ 7. Defendants used their "hold to place [Plaintiff] on the ground in order to contain him." *Id.*

Once on the ground, Defendant Robinson gave Plaintiff repeated commands to unlock his arm and place both arms behind his back. Robinson Decl. ¶ 9; Echano Decl. ¶ 8; Hensel Decl. ¶ 8. When Plaintiff finally complied, Defendant Robinson handcuffed him. *Id.*

Defendant Robinson checked Plaintiff for injuries before he and Defendant Echano escorted Plaintiff to a holding cell. Robinson Decl. ¶ 10. Defendant Robinson claims that he took pictures of Plaintiff "after he was removed from his cell." Robinson Decl. ¶ 11, Ex. A. Defendants Robinson and Echano claim that Plaintiff had "no visible injuries other than a small scratch on his nose." Robinson Decl. ¶ 10; Echano Decl. ¶ 9.

While in the holding cell, Plaintiff complained of shoulder pain and was examined by a Correctional Health Nurse for injuries. Robinson Decl. ¶ 12. No major injuries were noted. *Id.* Plaintiff was provided Motrin for pain. *Id.*

Defendants Robinson and Echano then returned to Plaintiff's cell to conduct a search. Robinson Decl. ¶ 13; Echano Decl. ¶ 10. Defendant Echano located "a box of suppositories, as well as a collection of hoarded hygiene supplies." Echano Decl. ¶ 10. According to Captain Mark Robins, Division Commander of the Corrections Division, "[s]tockpiling medications and

4

hoarding items are violations of MCF Rules." Robbins Decl. ¶ 3.

On June 4, 2014, Plaintiff was escorted to medical because a doctor ordered x-rays of Plaintiff's "left shoulder and chest." Grivas Decl. ¶ 3. Defendant Grivas was the Correctional Health Nurse on duty that day. *Id.* ¶ 2. Plaintiff asked Defendant Grivas if the doctor had ordered an x-ray of his lower rib-cage, and Defendant Grivas responded that "the doctor had not ordered an x-ray of his lower left rib cage." *Id.* ¶ 3. The x-rays of Plaintiff's left shoulder and chest did not reveal any injuries or fractures. Dr. Ding Decl. ¶¶ 2, 3, 4, Ex. A.

Following a lengthy grievance process relating to his medical claim (further elaborated on below), Plaintiff was given an x-ray of the lower left side of his rib cage on July 9, 2014. Robbins Decl. ¶ 10, Ex. G at 1; Dr. Pederson Decl. ¶ 2. The record shows that the results of the x-ray to his "chest and left rib" indicate that they were "negative for evidence of rib fractures." Dr. Pederson Decl. ¶ 2; Ex. A.

### 3. Plaintiff's June 9, 2014 and June 26, 2014 Inmate Grievances

On June 9, 2014, Plaintiff submitted a grievance on an "Inmate Grievance Form" relating to his claim that he had been denied proper medical treatment because of Defendant Grivas's "refusal to follow the physician's directions and have xrays taken of [his] ribcage on the lower left side." Robbins Decl. ¶ 4, Ex. A at 2. Plaintiff claims that because of Defendant Grivas's actions "[he] received no medical treatment for his lower left-side rib cage which was severely injured." *Id.* Under "Staff member's response," dated June 14, 2014, it states: "On June 2, 2014, the doctor wrote an order for 'xray chest & L shoulder.' There was no order for x-ray for rib cage on lower left side." *Id.* Under "Supervisor's response," dated June 16, 2014, it states "Appropriate response." *Id.* Under the response section for "Watch Commander," dated June 17, 2014, it states: "Treatment orders explained above. Your information should be in the form of a medical request and correspondence with the medical department, not a grievance form." *Id.*

On June 23, 2014, Plaintiff appealed the denial of his June 9, 2014 grievance. Robbins Decl. ¶ 5, Ex. B. Captain Robbins claims that he reviewed this appeal. Robbins Decl. ¶ 5.

On June 26, 2014, Plaintiff filed another grievance stating that he was "being

5

systematically denied a follow-up examination of his lower rib cage on the lower left-side which was injured three weeks ago [because of] which he continues to experience severe pain." Robbins Decl. ¶ 4, Ex. A at 3. Plaintiff also requested a refill of his prescribed medication, "Preparation H Ointment," and "a[n] *Ols[e]n* review[5] of his medical file." *Id.* (footnote added). Under "Staff member's response," dated June 27, 2014, it states: "Have you set up to be seen for a follow-up exam of the lower rib cage L side. As to the Prep. H suppositories will reorder from pharm. when supply runs low. However you do receive you Prep. H in the evening med pass." *Id.* Under "Supervisor's response," dated June 30, 2014, it states "Appropriate response." *Id.* Under the response section for "Watch Commander," dated July 1, 2014, it states: "Addressed by medical department. If you are requesting a review of some aspect of your medical file, please complete a request form to medical with the specifics of what you desire." *Id.*

On July 8, 2014, Plaintiff appealed the denial of his June 26, 2014 appeal. Robbins Decl. ¶ 6, Ex. C. Captain Robbins claims that he reviewed this appeal. Robbins Decl. ¶ 6.

### 4. Plaintiff's June 9, 2014 Informal Handwritten Complaint

In his June 9, 2014 Informal Handwritten Complaint, Plaintiff claims the excessive force incident was on "Thursday, May 22, 2014." Dkt. 18-17 at 2. The Court notes that May 22 is the Thursday before May 29. The Court assumes Plaintiff inadvertently listed the date as May 22 instead of May 29 because he proceeds to describe the exacts same incident that took place on May 29 at "approximately 9:45 p.m." involving Defendants Robinson and Echano as well as an "unidentified Sheriff['s] deputy" and stating as follows to describe the aforementioned Defendants' use of force:

> C/O Robinson then directed me to get against the wall to be handcuff[ed]. Before I could respond C/O Robinson rushed directly up to me with a closed first and full force hit me in the nose causing a two inch scare [sic] on my nose. C/O Echano came into my cell right behinded [sic] C/O Robinson. C/O Echano started hitting me with a closed fist in the left-side of my lower rib cage causing a fracture, while the sheriff deputy watched at the cell door while C/O Robinson and C/O Echano physically assaulted me for

---

[5] An *Olsen* review is an administrative procedure which allows an inmate to review his central file.

6

approximately ten minutes.

*Id.*

### 5. Captain Robbins's Response to Plaintiff's Informal Handwritten Complaint and Appeals of His Denied Grievances

In a letter dated June 27, 2014, Captain Robbins states that he received Plaintiff's June 9, 2014 Informal Handwritten Complaint as well as his June 23, 2014 letter appealing the denial of his June 9, 2014 grievance. Robbins Decl. ¶ 8, Ex. E at 2. Captain Robbins's June 27, 2014 letter, which is addressed to Plaintiff, states as follows:

> I am in receipt of your 2 letters in which you state you were assaulted by two correctional officers and later denied x-rays by a staff nurse. ¶ Your allegations against the correctional officers is [sic] being looked into and I have forwarded your complaint against the staff nurse to the supervisor in Correctional Health Services.

*Id.* There is nothing in the record regarding the results of any investigation into Plaintiff's "allegations against the correctional officers." Instead, in his declaration, Captain Robbins claims that Plaintiff's "letter to Sheriff Munks is not in compliance with the [MCF]'s inmate grievance procedure." Robbins Decl. ¶ 11. There is nothing further in the record showing that any other response was issued as to Plaintiff's June 9, 2014 Informal Handwritten Complaint.

In another letter dated July 8, 2014, Captain Robbins states that he received Plaintiff's June 23, 2014 appeal and "met with the Director of Correctional Health Services to have [Plaintiff's] case evaluated." Robbins Decl. ¶ 9, Ex. F at 1. Captain Robbins confirmed that Defendant Grivas was "correct in reporting to the x-ray technician that an x-ray of [his] rib cage was not ordered," stating: "Your file has been reviewed and it has been verified from the doctor's clinical note, that an x-ray of your chest and left shoulder was ordered on 6/2/14, not an x-ray of your ribs." *Id.* Captain Robbins added that Plaintiff was "evaluated on 7/1/14, and an x-ray of [his] rib cage was ordered to address [his] concern of a rib injury." *Id.* Captain Robbins explained to Plaintiff that he was "scheduled to receive an x-ray on 7/7/14, [but] it may take several weeks before [they] receive the official report of the results." *Id.* Finally, the letter ends with Captain Robbins stating as follows: "After a review of the file, the Director of Correctional Health Services i[s] confident that you are receiving appropriate treatment and follow up and I agree with this assessment." *Id.*

7

Lastly, in a letter dated July 22, 2014, Captain Robbins claimed that he received Plaintiff's July 8, 2014 appeal and had a "conversation" with Plaintiff at his cell on June 18, 2014. Robbins Decl. ¶ 10, Ex. G at 1. The letter states as follows:

> This letter is a follow-up to your appeal dated 7/8/14 and the conversation I had with you at your cell on 7/18/14. In your appeal you state that you did not receive an x-ray of your lower rib cage and that you are being systematically denied an *Olsen* review of your medical file. I have confirmed with you and the Correctional Health Services that you have received an x-ray and an authorization to release your medical records has been provided to you.

*Id.*

### III. PROCEDURAL SUMMARY

In its initial review, the Court found a cognizable Fourteenth Amendment claim for the use of excessive force against Defendants Robinson, Echano and Hensel, as well as claim for deliberate indifference to Plaintiff's serious medical needs against Defendant Grivas. Dkt. 6 at 4. The Court then ordered service of the complaint on Defendants Robinson, Echano, Hensel and Grivas and set a briefing schedule. *Id.* at 4-7.

Thereafter, Defendants filed the instant motion for summary judgment. Dkt. 18. Plaintiff has filed his opposition, and Defendants have filed their reply. Dkts. 21, 22.

### IV. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts

showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting in part *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  A factual dispute is genuine if it "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  *Id.* at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  In support of the motion for summary judgment, Defendants have presented various exhibits and declarations from each Defendant as well as those from Dr. Alexander Ding, Dr. Mark Pederson, and Captain Robbins.  Dkts. 18-4 to 18-13.  Defendants have attached Plaintiff's grievances forms and appeals relating to the deliberate indifference claim in this action, as well as each reviewer's response at the various levels of review.  Robbins Decl., Exs. A, B, C, E, F, G.  Defendants have also attached a copy of Plaintiff's June 9, 2014 Informal Handwritten Complaint.  Robbins Decl., Ex. D.

Plaintiff has filed a verified complaint (Dkt. 1 at 1-8) and a verified declaration in support of his opposition to the motion for summary judgment[6] (Dkt. 21-1 at 1-3).  The Court will

---

[6] Plaintiff's supporting exhibits attached to his opposition relate to the exhaustion issue and

construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). Plaintiff's opposition will not be considered to the extent they recite disputed facts because it is not signed under "penalty of perjury." Dkt. 21.

## V.   DISCUSSION

### A.   Exhaustion

Under the law of the circuit, in the rare event that a failure to exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the PLRA, should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

Further, under *Albino*, "a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). The burden then shifts to the plaintiff, "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* Affirmative

---

are identical to the exhibits attached to Captain Robbins's declaration. *Compare* Robbins Decl., Exs. A-G with Dkt. 21-1 at 6-27. However, the exhibits attached to Captain Robbins's declaration are more organized; therefore, the Court has chosen to cite only to those exhibits.

acts by prison officials that disrupt or prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010). The ultimate burden of proof, however, remains with the defendants, and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191.

In the instant motion for summary judgment, Defendants argue, *inter alia*, that Plaintiff's excessive force claim must be dismissed for failure to exhaust administrative remedies. Dkt. 18-2 at 10-12. Meanwhile, Plaintiff has submitted a declaration filed under penalty of perjury stating that the grievance procedure was *unavailable* to him because "[n]o deputy would give [him] a grievance form" and thus jail officials prevented him from submitting a formal grievance relating to the excessive force claim at issue. Dkt. 21-1 at 2. Defendants dispute this and argue that Plaintiff "failed to submit any evidence in any form in support of this claim." Dkt. 22 at 2. In essence, they seem to argue that Plaintiff manufactured the aforementioned allegations that the grievance procedure was unavailable to him. *Id.* Defendants also argue that on June 9, 2014, Plaintiff was able to "file[] a formal grievance regarding his deliberate indifference claim and that it was appropriately addressed." *Id.* In addition, Defendants acknowledge that Plaintiff mailed an Informal Handwritten Complaint, also dated June 9, 2014, to Sheriff Munks regarding his claim of excessive force. Robbins Decl. ¶ 7, Ex. D. Defendants claim that Plaintiff's July 9, 2014 Informal Handwritten Complaint "is not in compliance with the [MCF]'s inmate grievance procedure." *Id.* ¶ 11. Lastly, it seems Plaintiff appears to argue that the grievance procedure was *also unavailable* because he attempted to raise his excessive force claim in his July 9, 2014 Informal Handwritten Complaint, but jail officials never responded to it.

With regard to the first step of the *Albino* burden shifting test, Defendants have sufficiently shown the existence of an available administrative remedy through MCF's grievance process and that a search of the jail's "records of inmate grievances from May 29, 2014 through [Plaintiff's] release date of August 6, 2014" does not produce evidence that he properly submitted a grievance relating to the excessive force claim to all levels of review before filing the instant action. Robbins Decl. ¶ 11. Meanwhile, as explained above, Plaintiff has declared, under penalty of

11

perjury, that he attempted to exhaust his administrative remedies as to his excessive force claim, but was thwarted in doing so. First, Plaintiff has declared, under penalty of perjury, that jail officials initially refused to give him a grievance form. Dkt. 21-1 at 2. Second, Plaintiff's July 9, 2014 Informal Handwritten Complaint specifically alleged his excessive force claim, and because it was never responded to, he was unable to pursue it. *See* Robbins Decl. ¶¶ 7, 11, Ex. D. There is evidence to support this assertion. The record shows that Plaintiff's July 9, 2014 Informal Handwritten Complaint was received, and that Captain Robbins acknowledged its existence in his June 27, 2014 letter and even stated that Plaintiff's "allegations against the correctional officers [were] being looked into." *See* Robbins Decl. ¶ 8, Ex. E at 2. However, there is no indication in the record as to any further response to his July 9, 2014 Informal Handwritten Complaint.

In view of the evidence demonstrating Plaintiff's thwarted efforts to pursue a grievance relating to his excessive force claim, including his sworn statement that they refused to give him a grievance form, and verified proof that he filed his July 9, 2014 Informal Handwritten Complaint, coupled with the jail officials' apparent failure to respond thereto, the Court finds this showing is facially sufficient under *Albino* to demonstrate the jail's administrative remedies were "effectively unavailable" to him. *See Paramo*, 775 F.3d at 1191-92 (finding that the prisoner's statements that she was thwarted from filing grievance was sufficient to meet her burden of production in showing that administrative remedies were not available to her); *see also Nunez*, 591 F.3d at 1224.

In contrast, the evidence produced by Defendants—the absence of any formal grievance in Plaintiff's jail records alleging the use of excessive force on May 29, 2014—is insufficient to carry their ultimate burden of proof in light of Plaintiff's verified factual allegations above. *See Paramo*, 775 F.3d at 1192 (finding that the declaration submitted by defendant did "nothing to rebut [the plaintiff]'s evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case").

Finally, as mentioned above Defendants argue that Plaintiff's allegations—that he was thwarted from exhausting his administrative remedies—are unsupported and therefore not credible. Dkt. 22 at 2. It is not the province of the Court on a summary judgment motion to make

12

credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). At this juncture, Plaintiff's evidence that he attempted to file a grievance relating to the May 29, 2014 excessive force incident but was thwarted from exhausting is sufficient to defeat Defendants' motion for summary judgment. *See Nunez*, 591 F.3d at 1224. Accordingly, Defendants are not entitled to summary judgment based on the failure to exhaust administrative remedies as to the excessive force claim, and their motion is DENIED on this ground.

### B. 42 U.S.C. § 1997e(e)

Defendants next argue that Plaintiff's excessive force and deliberate indifference claims should fail under 42 U.S.C. § 1997e(e) because he did not suffer any physical injury. Dkt. 18-2 at 12.

The statute Defendants cites has been construed by the Ninth Circuit to have a rather limited application. 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." The physical injury requirement only applies to claims for *mental and emotional injuries* and does not bar an action for a violation of a constitutional right. It is unclear exactly what allegations or claim Defendants challenge because Plaintiff did not allege a separate claim in his complaint for mental or emotional injuries. *See* Dkt. 1 at 3. Instead, Plaintiff seeks "compensatory damages of $3,000,000 (Three Million Dollars)." *Id.*

In *Oliver v. Keller*, the Ninth Circuit held that section 1997e(e) does not bar claims for nominal, compensatory or punitive damages based on the violation of a constitutional right. 289 F.3d 623, 630 (9th Cir. 2002). Under *Oliver*, monetary damages would be available for a violation of Plaintiff's constitutional rights without regard to his ability to show that he was physically injured. *See id.* Because Plaintiff's complaint raises constitutional claims of excessive force and deliberate indifference, he need not allege a physical injury as a precondition to recovering damages. *Id.* ("To the extent that appellant's claims for compensatory, nominal or punitive

13

damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, section 1997e(e) is inapplicable and those claims are not barred"). Accordingly, the Court DENIES Defendants' motion for summary judgment as to their argument that Plaintiff's excessive force and deliberate indifference claims fail under section 1997e(e).

### C.  Merits of Legal Claims

#### 1.  Excessive Force

##### a.  Applicable Law

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Due Process Clause protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. *See Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)); *see also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002). The Ninth Circuit has stated the factors a court should consider in resolving a due process claim alleging excessive force. *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *Id.*

##### b.  Analysis

Here, Plaintiff alleges that Defendants Robinson and Echano used excessive force against him. These Defendants acknowledge that they did use force on Plaintiff, but assert that the force used was reasonable. Meanwhile, Plaintiff's claim against Defendant Hensel involves a claim that this Defendant failed to intervene to prevent the use of excessive force.

In the instant case, the parties have offered markedly different accounts of the altercation underlying Plaintiff's excessive force claim. Defendants Robinson and Echano contend they used only the amount of force necessary to subdue Plaintiff, who was resisting staff. In contrast,

Plaintiff claims that these Defendants' use of force was completely unjustified and caused him suffer injuries as result of this incident. The record presented thus reveals that there is a genuine issue of material fact as to whether the force used was applied in a good faith effort to maintain and restore discipline.[7]

Plaintiff has also created a genuine issue of material fact that Defendant Hensel had an opportunity to intervene to prevent the use excessive force against Plaintiff by Defendants Robinson and Echano.

### c. Qualified Immunity

Alternatively, Defendants argue that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an individual official is entitled to qualified immunity, the Court must determine whether (1) the official violated a constitutional right and (2) the constitutional right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the particular situation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Viewing the evidence in a light most favorable to Plaintiff, the facts presented could

---

[7] Plaintiff claims he suffered injuries as a result of the alleged use of force, including a "two-inch scare [sic]" on his nose and "extreme pain" on the lower left side of his rib cage. Dkt. 21-1 at 2. Plaintiff adds that he "believed [his] rib cage on the lower left side [was] fractured." *Id.* However, Defendants argue that medical staff did not find that Plaintiff "suffered any fractured ribs or any other serious injury." Dkt. 18-2 at 13. Thus, they argue that "there is no evidence that Plaintiff suffered any significant injury, which supports the conclusion that the force used against Plaintiff was not excessive." *Id.* at 12. Therefore, Defendants conclude that no evidence of any allege fracture exists and thus argue that because Plaintiff fails to demonstrate any physical injury, summary judgment should be granted for them." *Id.* at 20. Again, the Court, in considering a summary judgment motion, cannot make credibility determinations or weigh conflicting evidence with respect to a disputed material fact, i.e., relating to Plaintiff's injury. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. In any event, the Court finds unavailing Defendants' argument because Plaintiff's allegations—that Defendants Robinson punched him in the nose and head area and that Defendant Echano punched him in his rib cage on the lower left side—support the finding that the force used by these Defendants was unreasonably excessive, even if Plaintiff did not suffer significant injuries. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (use of force that is more than *de minimus* and/or use of force of a sort repugnant to the conscience of mankind may violate Eighth Amendment even if plaintiff did not suffer significant injuries).

15

reasonably support a showing that Defendants used excessive force in violation of Plaintiff's constitutional rights. As to the second inquiry for qualified immunity, Defendants do not dispute that the right to be free from excessive force was clearly established at the time of the incident, but instead argue that their conduct was reasonable under the circumstances. Whether a prison official acted reasonably is a mixed question of law and fact: "It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took. If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995). Again, construing the evidence in a light most favorable to Plaintiff, a reasonable officer in either Defendants Robinson's, Echano's or Hensel's position could not have found reasonable their actions of using unprovoked force or failing to intervene—punching him in the nose and head area (Defendants Robinson), punching him in his rib cage on the lower left side (Defendant Echano), and failing to intervene during the aforementioned use of force (Defendant Hensel). Under Plaintiff's version of the facts, no reasonable officer could believe that these Defendants' actions were permitted under the Fourteenth Amendment. In addition, where, as here, "the material, historical facts" are in dispute, the availability of qualified immunity does not turn solely on a question of law, and the district court is precluded from granting summary judgment on qualified immunity grounds. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 2008) (holding existence of issues of material fact precludes court from granting summary judgment qualified immunity grounds, and observing sending factual issues to jury but reserving to judge ultimate "reasonable officer" determination leads to serious logistical difficulties).

In sum, accepting Plaintiff's allegations as true, genuine issues of fact exist as to whether Defendants Robinson, Echano, and Hensel violated Plaintiff's constitutional rights. Accordingly, they are not entitled to summary judgment as to Plaintiff's excessive force claim on the merits or based on qualified immunity.

### 2. Deliberate Indifference

#### a. Applicable Law

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.[8] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "[u]nnecessary and wanton infliction of pain." *Id.* The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.*

Once the prerequisites are met, it is up to the factfinder to determine whether the defendant exhibited deliberate indifference. A plaintiff need not prove complete failure to treat. Deliberate indifference may be shown where access to medical staff is meaningless as the staff is not competent and does not render competent care. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without

---

[8] Even though pretrial detainees' claims arise under the Due Process Clause, the Eighth Amendment serves as a benchmark for evaluating those claims. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (Eighth Amendment guarantees provide minimum standard of care for pretrial detainees).

17

examination prescribed contraindicated sedatives). Such indifference may also appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. *See McGuckin*, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable section 1983 claim).

### b. Analysis

Plaintiff claims that his rib cage was injured after the May 29, 2014 excessive force incident. Dkt. 21-1 at 3. As mentioned above, Plaintiff claims that on June 4, 2014, Defendant Grivas denied him x-rays to the lower left side of his ribcage after the incident. *Id.*

Beginning with the first step in the analysis, the seriousness of Plaintiff's injuries, Plaintiff alleges that he suffered "extreme pain from the injury to [his] rib cage on the lower left side for nearly one year." *Id.* Therefore, Plaintiff has established that a "serious" medical need for treatment exists based on his allegations of substantial pain. *See McGuckin*, 974 F.2d at 1059-60.

The Court must now move to the second step of the deliberate indifference analysis, the nature of Defendant Grivas's response to Plaintiff's serious medical need for treatment. Plaintiff claims that the failure of Defendant Grivas to ensure that he was given an x-ray to his lower left side of his rib cage caused him pain. While the record shows that Plaintiff was eventually given an x-ray to his lower left side of his rib cage about a month later on July 9, 2014, he still argues that he suffered pain due to the delay. Dkt. 21-1 at 3.

As an initial matter, Plaintiff has presented no evidence that Defendant Grivas was responsible for the delay in providing Plaintiff with the aforementioned x-ray. *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (doctor entitled to summary judgment where plaintiff claimed he did not receive antibiotics prescribed for him by defendant, but failed to produce any evidence showing failure was in any way within defendant's control). Plaintiff merely claims that when he asked Defendant Grivas if the doctor ordered x-rays of his lower left side of his rib cage, Defendant Grivas answered, "No." Dkt. 21-1 at 3. The record confirms that,

in fact, the doctor's clinical note indicated that an x-ray of Plaintiff's "chest and left shoulder was ordered on 6/2/14" and *not* an x-ray of Plaintiff's rib cage. Robbins Decl. ¶ 9, Ex. F at 1. Thus, Plaintiff has failed to provide sufficient proof that the delay was because of a "purposeful act or failure to act on the part of [Defendant Grivas]." *McGuckin*, 974 F.2d at 1060. Therefore, Plaintiff has failed to raise a triable issue of fact that Defendant Grivas was responsible for any delay in Plaintiff being given an x-ray to the lower left side of his rib cage.

Even if Defendant Grivas was responsible for the delay in Plaintiff being given an x-ray to the lower left side of his rib cage, Plaintiff has failed to show that the delay was deliberate indifference in the circumstances of this case, because no substantial harm resulted. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay of treatment of over one month was not actionable because no substantial harm resulted); *cf. Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (delay of one year in providing knee surgery for inmate, resulting in serious aggravation of injury and permanent impairment, may be actionable). Had Defendant Grivas known that there was a substantial risk that Plaintiff's condition would worsen without being given the aforementioned x-ray, such a delay may have amounted to negligence, but is not enough to establish deliberate indifference. *See Frost v. Agnos*, 152 F.3d 1124, 1130 (alleged delays in administration of pain medication, treatment of a broken nose, and providing plaintiff with a replacement crutch may have amounted to negligence but were not enough to establish deliberate indifference). However, such is not the case. The record shows that after Plaintiff's lower left side of his rib cage was x-rayed on July 9, 2014, and the results indicated that they were "negative for evidence of rib fractures." Dr. Pederson Decl. ¶ 2; Ex. A.

Even viewing the evidence and the inferences drawn therefrom in the light most favorable to Plaintiff, no reasonable jury could return a verdict for Plaintiff against Defendant Grivas. Therefore, Plaintiff has failed to create a genuine issue of material fact showing that Defendant Grivas was deliberately indifferent to his serious medical needs. Accordingly, Defendant Grivas's motion for summary judgment is GRANTED as to this claim.[9]

---

[9] Defendant Grivas has also asserted a qualified immunity defense. Dkt. 18-2 at 17.

## VI. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Defendants' motion for summary judgment is GRANTED in part as to Plaintiff's the deliberate indifference claim and DENIED in part as to his excessive force claim. Dkt. 18.

2. Defendants Echano, Robinson, and Hensel are not entitled to summary judgment in their favor on Plaintiff's excessive force claim.

3. Defendant Grivas is entitled to summary judgment on Plaintiff's claim of deliberate indifference to his serious medical needs. When a final judgment is entered, it will include a judgment in favor of Defendant Grivas and against Plaintiff.

4. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference. The Court finds that a referral is in order as to Plaintiff's excessive force claim. Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference. The conference shall take place within **sixty (60) days** of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within **ten (10) days** after the conclusion of the conference, file with the Court a report of the result of the conference. The Clerk of the Court shall provide a copy of this Order to Magistrate Judge Vadas.

5. If this matter does not settle, then this case will proceed to trial.

6. This Order terminates Docket No. 18.

IT IS SO ORDERED.

Dated: August 11, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

Because the Court has found that Plaintiff's deliberate indifference claim fails on the merits, the question of qualified immunity need not be reached.